**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Daniel T. Mullen, | ) | |
| | ) | Case No. 12 CV 3751 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Mason |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF DANIEL T. MULLEN'S MOTION AND MEMORANDUM FOR SUMMARY REVERSAL OF COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION'S DENIAL OF DISABILITY OR ALTERNATIVELY FOR REVERSAL AND REMAND TO A DIFFERENT ADMINISTRATIVE LAW JUDGE**

NOW COMES Plaintiff, Daniel T. Mullen, by his attorney, Michael Patrick Mullen of the law firm of Mullen & Foster, and seeks Summary Reversal of Commissioner's denial of disability benefits or alternatively for reversal and remand to a different Administrative Law Judge ("ALJ"), and in furtherance states as follows:

Appeal is made of the unfavorable Decision of Office of Disability Adjudication and Review dated September 21, 2010. (Record - Court Transcript Index p. 8). ("Decision"). The Decision held Claimant has not been under a disability and is capable of performing past relevant work as an accountant. That determination and Decision misconstrues the evidence, is against the weight of the evidence and ignores more recent evidence and misapplies the law. Claimant requests a determination of disability and eligibility for disability benefits, or alternatively that the case be returned to another ALJ for a new decision.

**INTRODUCTION**

1

Daniel Timothy Mullen ("Daniel"), age 43 at time of hearing, now age 45, suffers from moderately advanced early onset Parkinsons Disease ("PD"), an incurable progressive disease which is progressing rapidly causing worsening symptoms, significant deterioration and increased disability. He is not able to perform work or work as an accountant because of his PD symptoms including deteriorated ability to use a computer and keyboard which is seriously hampered, an inability to write adequately and cognitive symptom deterioration. Hearing Tr. pp. 39-40.

Daniel also has had two total hip replacements, in 2002 and 2005. He suffered complications in 2006 after his last hip replacement surgery in 2005. The hip replacements are a secondary medical disability condition which aggravate the effect of the PD symptoms. Hearing Tr. pp. 27-28. The ALJ relied upon early medical records including several not related to PD. But these references to medical evidence of 2005 and 2006 are separate from PD or its intensity, persistence or functionally limiting effects.

Daniel's debilitating PD symptoms are tremors in both left and right extremities, legs and arms, as well as neck and torso tremors; significant muscle rigidity; bradykinesia (slow movement); dyskinesa (involuntary movements); facial masking; limited hand dexterity and postural instability. Hearing Tr. Pp. 29-31, 33-39.

In addition, Daniel has suffered cognitive deterioration because of PD and his required medication. He suffers from inability to concentrate, lack of ability to think clearly, fuzzy thinking, inability to focus on and complete tasks, deteriorating memory and deteriorated ability to communicate clearly and effectively. Hearing Tr. pp. 39-40.

Daniel takes extensive PD medication[1] daily which produce only partial relief, the length and onset of which is unpredictable. The time between prescribed doses is four hours. The time and sequence of dosing is restricted by the need to pace the medication because its effectiveness will lessen with sustained prolonged use over time. The medication provides about 75% relief while effective. The onset of the effectiveness of the medication is now about 60 to 75 minutes after taking it, up from 30 to 45 minutes previously. That results in a effective medicated window of about 2 and 3/4 hours for every 4 hours where he is about 75% relieved of his symptoms. The exact onset of effectiveness is unpredictable. He is always subject to his symptoms at about 25% intensity even while his medication is effective. Hearing Tr. pp. 35, 37-40.

## **CLAIMANT MEETS THE REQUIREMENT OF MEDICAL LISTING 11.06 FOR PARKINSONIAN SYNDROME**

It is uncontestable that Daniel meets all of the requirements of Regulation 20 C.F.R. Part 404, Subpart P Appendix 1 11.06 Parkinsonian Syndrome consisting of significant muscle rigidity, bradykenesia (slow movement) or tremors in two extremities (here both his legs and arms), dyskinesa (involuntary movements) limited hand dexterity and postural instability. Hearing Tr. pp. 30, 33-35, 37-40. Therefore he clearly is disabled contrary to the initial determination rejecting the claim, the 09-21-10 Decision of the ALJ and the rejected review of appeal of that ALJ decision by the Appeals Council.

The ALJ (Decision, p.4) found that claimant does not meet Medical Listing 11.06 for Parkinsonian Syndrome. That determination ignores the record including medical records submitted and Claimants testimony. That finding is inaccurate and clearly erroneous. See

---

[1] Sinemet 4 times a day, Azilect 1 time a day and Mirapex 3 times a day.

Exhibit 11-F and 12-F[2], especially the most recent 07-24-10 evaluation by Dr. Dexter, one of his treating physician for Parkinson Disease, diagnosing moderately advanced Parkinson Disease.

The medical evidence submitted clearly shows the relevant symptoms establishing qualification under Medical Listing 11.06. In addition, Claimant testified to these symptoms which result in sustained disturbance of gross and dexterous movements or gait and station. Hearing Tr. pp. 33-34, 37-40.

Indeed even at the hearing, the ALJ noted he observed tremors in Claimants left arm and hand despite medication. Hearing Tr. pp. 37-38.

A claimant who establishes that he suffers from one of the impairments listed at 20 CFR pt 404 Subpt P App 1 is considered disabled without further inquiry. Regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work. *Heckler v. Campbell*, 461 US 458 (1983). If claimant is not currently employed, has severe impairment and that impairment meets or equals listed impairment, he will automatically be found disabled. *Knight v. Chater*, 55 F.3d 309 (7th Cir. 1995).

If an error of law is committed by the Commissioner then the "Court must reverse the decision regardless of the volume of evidence supporting the factual finding. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997), *Talmo v. Astrue*, 2012 WL 1952575 (N.D. Il.). The failure to apply Medical Listing 11.06 for Parkinsonian Syndrome is an error of law.

The ALJ merely made a boilerplate recital in his decision that "the Claimant does not meet or equal Medical Listing 11.06 for Parkinsonian Syndrome because the record does not

---

[2] That evidence was submitted by fax on 08-12-10 after Social Security informed the undersigned that would be timely and the material would be associated for the 8-17-10 hearing. However upon learning just prior to the hearing that the ALJ did not have the material it was resubmitted to the ALJ. The ALJ was visibly upset and expressed anger at Claimant and his counsel stating he didn't appreciate not getting the evidence before hand and cut off counsel from then explaining the circumstances although he later allowed counsel to explain and apologize. (Hearing Tr. pp. 24, 30).

contain signs of significant rigidity, bradykenesia or tremors in two extremities which singly or in combination result in sustained disturbance of gross or dexterous movements or gait and station." The Seventh Circuit has made clear such boilerplate recital is not enough to fulfill SSR96-7p. *McClesky v. Astrue*, 606 F3d. 351, 352 (7th Cir. 2010).

This ALJ determination contradicts what the ALJ said at the hearing. The ALJ stated that claimant submitted evidence that he fits within the Medical Listing 11:06. (Hearing Tr. p. 41). The ALJ also stated that putting aside the age issue, he would qualify under the Parkinsons Syndrome listing. (Hearing Tr. pp. 33-34).

## **THE DECISION SHOULD BE REVERSED**

The Decision is incorrect and should be set aside. The Decision misconstrues the facts, is against the weight of the evidence and ignores and misapplies the law.

One significant error in this case is the failure of Social Security to recognize that Daniel's condition is deteriorating while the case continues. The original claim was made on 09-12-08, the appeal filed on 06-10-09, medical evidence was updated through 07-29-10 and the hearing occurred on 08-17-10. The operative date is the hearing date. His symptoms have clearly gotten worse as established by the medical evidence. (See Exhibits 11-F and 12-F.)

The ALJ seems to have confused the sequence of Daniel's PD treatment and the role of the Doctors involved. Daniel was first diagnosed with PD on 06-06-08 by Dr. Dexter who placed him on PD medication and remains his treating physician seeing him regularly since. Daniel later went to Dr. Sa referred to extensively by the ALJ who confused Dr. Sa as his treating doctor for PD which he was not. Dr. Sa was only seen for a second opinion regarding PD on 09-09-08. Dr. Dexter was the treating physician. Dr. Sa was confused in his report relating a "four year history" when Daniel had only been diagnosed with PD three months earlier

5

by Dr. Dexter. He diagnosed Parkinsons Disease. Dr. Sa prescribed medication for Daniel that was deleterious which Daniel did not use and Daniel did not return to Dr. Sa. Dr. Sa's opinion has been proven wrong by prior and subsequent Doctors' opinions. On March 10, 2009 upon Social Security inquiring, Dr. Sa wrote "<u>currently</u> his disease is mild and not interfering with his activities of daily living." (Underlining supplied)(Exhibit 7F/10). However, Dr. Sa had not seen Daniel for six months and there was no basis for this 03-10-09 statement. He was not currently treating Daniel or seeing him. More current Doctors' opinions describe Daniel's condition as moderately severe. That 03-10-09 Dr. Sa statement was quoted and highlighted by the ALJ and in the initial rejection of disability report as significant. It should not be. It is inaccurate. Even the ALJ finds the PD symptoms "albeit severe", certain and credible and established by medical reports. (Decision, p. 5,7). Dr. Sa's statement should be rejected and disregarded. More importantly it is outdated. Focus should be on recent medical evidence reflected in Ex.'s11-F and 12-F and the overall evidence showing disease and symptom progression as well as lessening effectiveness of medication.

 Dr. Dexter's reports consistently noted PD, rigidity, tremors, bradykenesia and other PD symptoms and document the progression of the disease thru 07-29-10.

 Dr. Bower, a specialist from Mayo Clinic examined Daniel on 03-16-10 noting PD, tremors, rigidity, stiffness, slow movement and difficulty walking and documents the progression of the PD and lessening effectiveness of the medication and increasing gaps in effectiveness.

 The ALJ improperly held Daniel's testimony regarding PD symptoms is not credible as inconsistent with the RFC. The Decision, p.5, states "the [ALJ] finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimants statements concerning the intensity persistence and limiting

effects of these symptoms are not credible <u>to the extent they are inconsistent with the above</u> residual functional capacity assessment." (underlining supplied).  Claimant disputes that the testimony is inconsistent with anything reflected in 5-F residual function assessment.

The ALJ states he gave "great weight to the State agency medical opinion" (Decision, p.7) but does not cite any specific document.  The undersigned is unable to locate any State agency medical opinion labeled as such in the record.  Instead the Physical Residual Functional Capacity Assessment ("RFC") appears to be the referenced document at Exhibit 5-F by Syd Foster O.D. dated 01-08-09 almost 18 months before the hearing.  It does not reflect Daniel's current deteriorated status at the hearing.  The assessment does not indicate its source.  Dr. Foster never examined Daniel so it must be based upon unspecified secondary sources.  (Daniel has submitted three Functional Reports.  The first dated 11-24-08 is Exhibit 3-E.  The second dated 06-10-09 is part of the appeal request and an updated Report dated 07-28-10 is part of Exhibits 12-F and 13-F.  The 07-28-10 Report is the most relevant which shows the current state of the progression of the disease at the hearing).

The Foster RFC assessment, Exh. 5-F, relied upon by the ALJ to support the ability to work is dated 01-08-2009, is woefully incomplete and does not cover work related functions.  RFC Exhibit 5-F does not cover physical limitations, manipulative limitations or communicative limitations, leaving those sections blank, stating "none established", when all are covered in the medical records as well as Daniel's functional reports and testimony.  Dr. Foster stated there were no medical source statements regarding physical capacities in file.  P.7.  Dr. Foster ignored the medical record evidence regarding physical capacities in the record.  The Foster report is contradictory in that it states there are no postural limitations established (p.4), yet on p. 8 additional comments it recognizes claimants "some postural instability, trouble standing for

7

extended periods, trouble getting around/ moving around." There is no reference whatsoever to the gaps in effectiveness of the medication. All of the functional reports submissions by Daniel and the supporting medical records are consistent and establish the increasing severity and the gaps in medical control of symptoms supporting disability and inability to work as an accountant.

For exertion limitations, Foster stated Daniel can life 20 pounds occasionally, stand or walk about 6 hours in an 8 hour workday, sit 6 hours in 8 hours and is unlimited to push or pull including operation of hand and/or feet controls. None of which are accurate or supported by the record. All are contradicted by the medical evidence.

Dr. Foster's statement regarding "medication have adequate control" is completely unsupported by the record and is incorrect. He cites no specifics nor does the ALJ.

Dr. Foster's RFC assessment completed on 01-08-2009 was Defendant's final medical portion of the disability determination. At that time Daniel had only been diagnosed with PD in June 2008 by Dr. Dexter, who tested him on 06-06-2008, Ex. 11F and 08-07-2008 Ex. 12F neither of which are referenced in the RFC.

Dr. Dexter's examinations, opinions and medical evidence of 06-17-2009, 12-18-2009 and 07-29-2010, where obviously not considered in the RFC. Nor was Dr. Bower's evidence of 03-16-2010. Although the evidence was available to the ALJ it was not part of what the RFC relied upon yet given "great weight" by the ALJ. The ALJ must access the RFC based upon all the relevant evidence of record. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) 20 CFR 404 1545(a). Reversal is required based upon this defect alone.

The ALJ stated "whenever statements about the intensity, persistence or functionally limiting effects of pain or symptoms are not substantiated by objective medical evidence, the

undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." This is another insufficient boilerplate recitation that must be rejected. *McClesky* at 352.

The ALJ is incorrect that Daniel's testimony of symptoms of rigidity, tremors in two extremities and bradykinesia, is not substantial and not substantiated by objective medical evidence. (Hearing Tr. pp. 30, 33-35, 37-40). It is substantiated by treating physicians Dr. Dexter and Dr. Bower. Dr. Dexter on 07-29-2010, Ex. 12F, p. 307, reported his moderately advanced Parkinsons is progressing and noted dyskinesia and significant bradykinesia and increased tone.

Dr. Bower, a Parkinson's subspecialist, on 03-16-2010, Ex. 12F, p. 310, reported "he has a left greater than right leg tremor and a left arm tremor at rest" and significant gait problems.

Dr. Dexter also on 12-18-2009, Ex. 12F, p. 312, reported "Daniel's Parkinsons disease advancing" with marked facial masking, tone increased bilaterally left more than right, slowed motion rates, difficulty rising from chair and forward flexed gait and decreased arm swing. Daniel reported his Parkinsons worsening with more symptoms on left side as well as right side, less steady when walks, more slowed in movements and more impaired.

Dr. Dexter also on 06-17-2009, Ex. 12F, p. 313, reported Parkinson tremor over left upper and lower extremity, severe facial masking, bilateral tone increased with cog wheeling, left more prominent than right, and gait short stepped and shuffling.

Dr. Dexter also on 08-07-2008, Ex. 12F, p. 315, reported patient struggling with significant Parkisonian features which persist.

Dr. Dexter also on 06-06-2008, Ex. 12F, p. 316, reported Parkinsons with facial masking, tremor left more than right, increased tone, forward flexed gait and decreased arm swing.

9

Dr. Dexter is Daniel's primary treating physician and Dr. Bower is also a treating physician. Dr. Dexter is not referred to or quoted by name by ALJ who appears to have not adequately considered his medical evidence.

The ALJ must confront the evidence that does not support his conclusion and explain why it is rejected. *Indorato v . Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004), *Talmo* at *8. Here ALJ did not do so nor is there any basis to reject the evidence.

Dr. Sa quoted extensively by the ALJ is not a treating physician. Dr. Sa was seen only once by Daniel for a second opinion on Parkinsons on 09-09-2008. In his report dated 09-09-2008, Dr. Sa confirmed Daniel had Parkinsons syndrome. The report did not state Daniel's PD did not interfere with his activities of daily living. Daniel did not like Dr. Sa and never went back to him because Dr. Sa gave him a medicine which was deleterious.

Nevertheless Dr. Sa on March 10, 2009, Exh. 7F/10, was contacted by SSA and wrote that "currently [claimants] disease is mild and not interfering with his activities of daily living." Dr. Sa was not treating Daniel at the time of that letter and had not seen him since 09-09-08. He was not then his treating physician. (Exh. 7F/7).

The ALJ makes inconsistent and contradicting findings and statements in his Decision. At pg. 7 he states, "the undersigned does not deny the certainty of the objective medical evidence and credibility of the subjective testimony suggesting the extent of Parkinsons symptoms restrict the claimant in his daily activities. Yet at pg. 3, the ALJ states "In the functional area of activities of daily living, the claimant has no limitation."

Although the ALJ above does not "deny the certainty of objective medical evidence and credibility of the subjective testimony suggesting the extent of Parkinsons symptoms restrict the claimant in his daily activities." He emphasizes Dr. Sa's negative comment of 03-10-2009 of

10

Daniel's Parkinsons "not interfering with his activities of daily living"  And the above ALJ quote contradicts the ALJ finding and statement "the claimants statements regarding the intensity, persistence and limiting effects of these symptoms are not credible."  Decision pg. 5.

The treating physician's opinion regarding nature and severity of claimant's injuries is entitled to controlling weight as it is well supported by medically acceptable techniques and not inconsistent with other substantial evidence.  *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010), quoting  20 CFR 404.1527(d)(2).  Thus Dr. Dexter and Dr. Bowers medical opinions are controlling, not Dr. Sa.

The ALJ (Decision, p.5) also inaccurately stated Daniel's 11-24-08 Function Report Ex. 3E states his postural instability, bradykenesia and tremors affect his memory and concentration.  This is inaccurate.  The Function Report, p.6-20 states those symptoms affect all of his physical movements and separately states memory and concentration level are deteriorating without attributing any specific cause.

The ALJ did not consider all the evidence particularly that favorable to Daniel in his evaluation of the case.  The failure to consider and discuss the evidence both pro and con amounts to a lack of sufficient reasoning and is reversible error.  *McClesky*, 606 F.3d at 352, *Windus v. Barnhard*, 345 F.Supp.2d 928, 946 (E.D. Wisc. 2004), *Talmo v. Astrue* at *7.

The ALJ recitation of the medical reports was selective and not balanced.  For instance, he reports Daniel reported "no falls" in the July 2010 Dr. Dexter (Exhibit 11-F 2/3 and 12-F 1/2) examination but fails to note a fall reported in the Dr. Bower examination of 03-16-2010. (Exhibit 12-F /3).

Perhaps the ALJ's selectivity and contradiction are attributable to his attitude and bias regarding Daniel's disability.  In the hearing, the ALJ impliedly accused Daniel of wanting to "sit

around for the rest of your life picking up a government handout." (Hearing Tr. p. 40). That is not a statement of a fair and impartial ALJ and certainly not an attitude of the SSA to assist disabled people as they are obligated to do. A Social Security disability claim is not a "Government handout." It is part of an insurance type benefit paid for and earned by taxes paid by the claimant, not a handout. That comment and the attitude reflected is demeaning and not a fair adjudication.

## **DANIEL UNABLE TO WORK**

The Decision focused on older medical evidence from 2005, 2006 and early 2007 before he was diagnosed with PD in 2008. The ALJ downplayed or ignored more recent PD medical evidence in 2008, 2009 and 2010 which is most relevant. While his PD symptoms began in December 2005 they progressed but were not diagnosed or treated until 2008. It also ignored evidence of inability to perform work as an accountant without any record evidence that Daniel can perform work as an accountant currently. Indeed all evidence regarding ability to currently work as an accountant is contrary. Yet the ALJ concludes Daniel is not disabled and can perform a full time job as an accountant because it "requires lifting less than 10 pounds, walking no more than 1 hour and sitting no more than 5 hours in a 8 hour workday." (Decision p. 7).

The most immediate past relevant work was in sales and marketing in a family owned business marketing authentic Native American arts, crafts and jewelry. (Hearing Tr. p. 27). The job required strong physical ability and required extensive travel, which Daniel cannot now perform. In addition, that job is not now available. Any sales and marketing job would require extensive travel and physical demands which Daniel clearly would physically be unable to perform.

The segmented factor analysis for disability factor 5, (can the claimant perform other work), places the burden of proof on the defendant. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). The defendant must provide evidence showing that claimant is able to do the work and that it is available. Here the defendant did not do so, the record is devoid of any such evidence. Here the claimant meets the PD Syndrome Medical Listing 11.06 so he is disabled and the inquiry ends. But even if it did not, the Defendant has not met it's burden and disability should be found or at minimum the case should be remanded.

Daniel has not done accounting work since before 2005. That determination that Daniel can work full time as an accountant ignores the limited time window of effectiveness of Daniel medical regime of about 2 and 3/4 hours at 75% effectiveness every 4 hours. The medication is not effective for about 1 1/4 hours every 4 hours. Thus Daniel suffers from the symptoms of tremors in extremities, neck and torso, significant rigidity, bradykinesia, dyskinesa postural instability and limited hand dexterity. The determination also ignores record evidence of cognitive deterioration consisting of inability to concentrate, fuzzy thinking, inability to think clearly, inability to focus on and complete tasks, deteriorating memory and ability to communicate clearly and effectively. Accountants must be able to utilize computers, computer keyboards and other equipment well which Daniel cannot do. The record evidence and testimony is that Daniel can no longer perform satisfactorily and successfully as an accountant (Hearing Tr. pp. 29-31, 33-39) and there is no contrary evidence, only the ALJ's unsupported speculation.

The ALJ states he "does not deny the certainty of the objective medical evidence and credibility of the subjective testimony suggesting the extent Parkinsons symptoms restrict the claimant in his daily activities. Nevertheless records as noted above demonstrate medications are

controlling the symptoms at an acceptable level for the claimant to work" (Decision p.7) as an accountant. The ALJ does not cite any specific record that medication controls symptoms at an acceptable level for claimant to work as an accountant. The medical evidence by treating physician Dr. Dexter and Dr. Bower do not establish that medicine control symptoms enough for Daniel to work. The ALJ improperly depreciated the medical evidence and Daniel's testimony by concluding his symptoms were controlled by medication. This requires reversal. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). It is only the ALJ's speculation unsupported by evidence. An ALJ must not succumb to the temptation to play doctor and make their own medical findings. *Rohan v. Chater*, 98 F.3d 966, at 970 (7th Cir. 1996). (At the hearing, the ALJ stated he forgotten more medicine than most doctors will know. Hearing Tr. p. 28.) At the hearing, the ALJ said there was no question that Daniel's symptoms would make work difficult. (Hearing Tr. p. 39). The ALJ must build an accurate and logical bridge from the evidence to the conclusion. *Dixor v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). ALJ failed to do so as there is no supporting evidence.

It is unclear and undescribed how the ALR recognizes the certainty of the objective medical evidence and credibility of the subjective testimony that the extent of Parkinson's symptoms restrict Claimant in his daily activities, yet reject that evidence regarding disability to work productively as an accountant.

That statement that medications provide acceptable control to work ignores that there are significant gaps in effectiveness of the medication. The medications do not control the symptoms for a sufficient time to allow for work as an accountant. They only provide for 75% relief even when fully effective. There is no relief for one to 1 1/4 hours each four hours and only 75% relief for 2 and 3/4 hours each four hours.

14

That would mean that an employer would have to accept claimant at 75% medicated for 2 and 3/4 hours for every 4 hours or 5 1/2 hours for eight hours. Daniel would be unmedicated for about 2 and 1/2 hours each 8 hours suffering from tremors, rigidity, involuntary movements, slowness, postural instability and limited hand dexterity. An employer would also have to accept an employee lacking in ability to successfully operate a computer, computer keyboard and other equipment. The employer would also have to accept an employee with cognitive problems unable to concentrate, unable to focus and complete tasks, suffering from unclear fuzzy thinking, deteriorating memory and inability to communicate clearly and effectively. This employee would be expected to perform the highly skilled requirements and tasks of an accountant. That is unrealistic and wrong.

The ALJ makes much of Daniel trying to leave his house to get fresh air, that he prepares his meals, does his laundry and cleans his house. The ALJ fails to recognize that these are tasks with short time requirements which he does when his medication is at its most effective.

Nevertheless, Daniel consistently testified these tasks take longer because of his PD even when his medication is at its most effective. Further he is slow in doing these tasks. (See remarks in Exhibit 3-E.) He does them in the environment of his home where he has no deadlines or time constraints, unlike a job as an accountant where time deadlines and strict time guidelines would apply. The ability to perform some short daily activities while medicated does not indicate that he can perform as a skilled accountant.

The ALJ stated "the undersigned does not deny the certainty of the objective medical evidence and credibility of the subjective testimony suggesting the extent of Parkinson's symptoms restrict the claimant in his daily activities. Nevertheless records as noted above demonstrate medications are controlling the symptoms at an acceptable level for the claimant to

work at the residual functional capacity." (Decision, p. 7). But the ALJ does not specify any records and no records exist which demonstrate medications are controlling symptoms at an acceptable level for Daniel to work. Not even Foster's unsupported noncurrent RFC.

The records do not demonstrate medications are controlling symptoms at an acceptable level for claimant to work. To the contrary, the evidence establishes wide lengthy gaps in the effectiveness of the medication including being unmedicated for 2 1/2 hours of a 8 hour workday span and only 75% effectiveness for the rest of the 8 hour workday.

The ALJ also misapplied the law and applied a mistaken legal requirement that Daniel had to show heightened legal standard or test because of his age of 43. The ALJ stated it would be more difficult for Daniel to establish a claim because he was under age 50. (Hearing Tr. pp. 24-25, 33). The ALJ applied a higher legal standard to Daniel's case because of his age as well as not fairly crediting the evidence and not applying the law. The undersigned knows of no law, rule or regulation that requires a PD claimant to be over 50 or 55 in order to establish a disability claim. While PD normally affects older people, Daniel has early onset PD which while less frequent is not rare. In any event, there is no higher standard or legal test for PD disability because this is early onset PD which struck him at an age under 50. To apply a heightened more difficult test because Daniel is under 50 misapplies the law and is a violation of due process and equal protection.

The Court should find that disability is established under Medical Listing 11:06 and enter a finding for disability benefits. All essential factual issues have been resolved and the record overwhelmingly supports a finding of disability. *Windus*, 354 F.Supp at 951. Further proceedings are unnecessary because the ALJ did not provide a legally sufficient basis for rejecting Daniel's testimony corroborated by medical evidence meeting Medical Listing 11:06

which alone establishes he is entitled to benefits. *Lingenfeiter v. Astrue*, 504 F.3d 1028, 1041 and ft.12.

Alternatively the Court should reverse and remand before a different ALJ. The hearing was seriously flawed, unfair and a different ALJ is necessary. *Gulembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *Rohan v Chater*, 98 F.3d 966, 971.

It should be noted that according to the ALJ, Daniel must establish disability on or before 12-31-10 in order to be entitled to a period of disability insurance benefits. (Decision, p.1). Therefor, Daniel must be granted his disability in this case as he may not qualify in the future.

## CONCLUSION

WHEREFOR, Claimant Daniel Timothy Mullen respectfully requests that his Disability Claim be granted, or alternatively, that his claim be returned to another administrative law judge for a new decision.

    Respectfully submitted,

    /s/ Michael P. Mullen
    Attorney for Daniel Timothy Mullen
    S.S.N. 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

Michael P. Mullen
MULLEN & FOSTER
333 North Michigan Avenue, Suite 1230
Chicago, IL 60601
312-750-16000